THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SCOTT M. SEABERG, Defendant-Appellant.

Second District    No. 2—92—1308

Opinion filed June 2, 1994.—Rehearing denied July 6, 1994.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, Robert J. Biderman, and Richard G. Norris, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

This is a direct appeal from a final order of the circuit court of Du Page County entered October 19, 1992, dismissing the *pro se* petition of Scott M. Seaberg for relief under the Post-Conviction Hearing Act (Act) (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.* (now codified, as amended, at 725 ILCS 5/122—1 *et seq.* (West 1992))). Petitioner argues on appeal that the trial court erred by summarily dismissing his petition, which alleged ineffective assistance of trial counsel. According to the petition, counsel (1) gave incorrect legal advice which denied petitioner his constitutional right to testify, and (2) failed to file a motion to suppress the fruits of an illegal, "no knock" search.

On January 12, 1990, defendant was indicted for the following offenses: one count of the unlawful delivery of between 1 and 15 grams of cocaine (Ill. Rev. Stat. 1987, ch. 56$^{1}/_{2}$, par. 1401(b)(2) (now codified, as amended, at 720 ILCS 570/401(c)(2) (West 1992))), two counts of the unlawful delivery of between 15 and 100 grams of cocaine (Ill.

Rev. Stat. 1987, ch. 56¹/₂, par. 1401(a)(2) (now codified, as amended, at 720 ILCS 570/401(a)(2)(A) (West 1992))), one count of the unlawful possession of between 15 and 100 grams of cocaine with the intent to deliver (Ill. Rev. Stat. 1987, ch. 56¹/₂, par. 1401(a)(2) (now codified, as amended, at 720 ILCS 570/401(a)(2)(A) (West 1992))), one count of armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2 (now 720 ILCS 5/33A—2 (West 1992))), and one count of resisting a peace officer (Ill. Rev. Stat. 1987, ch. 38, par. 31—1 (now 720 ILCS 5/31—1 (West 1992))). He was found guilty in a bench trial and received the following sentences: 6 years and a $1,000 fine on count II; 8 years and a $2,500 fine on count III; 10 years and a $5,000 fine on count IV; 6 years and $5,000 on count IV; and 300 days' incarceration on count VI. Count I was dismissed because it arose out of the same transaction as count II, armed violence. All sentences were ordered to be served concurrently. Petitioner did not directly appeal his convictions or sentences. In September 1992 he filed in the circuit court a post-conviction petition alleging violations of his constitutional rights and asking that his convictions be set aside in accordance with the Act. The petition was accompanied by petitioner's affidavit and a supporting memorandum of law. The court dismissed the petition without a hearing, on the ground that it was frivolous and patently without merit.

The Act provides a post-conviction remedy to petitioners who claim that substantial violations of their constitutional rights occurred during trial. (*People v. Eddmonds* (1991), 143 Ill. 2d 501, 510.) A post-conviction proceeding is a collateral attack upon a final judgment, and its purpose is not to determine guilt or innocence, but to inquire into constitutional issues which have not been adjudicated. (*Eddmonds*, 143 Ill. 2d at 510.) The petitioner ultimately bears the burden of proving that a substantial constitutional violation occurred at trial. *Eddmonds*, 143 Ill. 2d at 510.

The Act sets out a three-step process for adjudicating petitions for post-conviction relief. At the first stage, the trial court considers the petition, without input from the State or further pleadings from the defendant, in order to determine if it is frivolous and patently without merit. (Ill. Rev. Stat. 1989, ch. 38, par. 122—2.1 (now codified, as amended, at 725 ILCS 5/122—2.1 (West 1992)).) If the petition is not dismissed as frivolous and patently without merit, the court proceeds to the second stage where counsel, who may be appointed to represent an indigent defendant, is afforded an opportunity to amend the petition. (Ill. Rev. Stat. 1989, ch. 38, par. 122—4 (now codified, as amended, at 725 ILCS 5/122—4 (West 1992)).) At this point, the State may move to dismiss. If the petition is not dismissed on the State's

motion, the matter moves into the third and final stage, which is an evidentiary hearing. Ill. Rev. Stat. 1989, ch. 38, pars. 122—5, 122—6 (now 725 ILCS 5/122—5, 122—6 (West 1992)).

Petitioner contends that the dismissal of his petition, which occurred at the first stage of the process, was improper. Section 122—2.1(a)(2) of the Act, which contains the pertinent statutory language, provides:

> "(a) Within 90 days after the filing and docketing of each petition, the court shall examine such petition and enter an order thereon pursuant to this Section.
>
> ***
>
> (2) If the petitioner is sentenced to imprisonment and the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision. Such order of dismissal is a final judgment and shall be served upon the petitioner by certified mail within 10 days of its entry." (725 ILCS 5/122—2.1(a)(2) (West 1992).)

To survive dismissal at the initial stage of a post-conviction proceeding, a petition need only present the gist of a meritorious constitutional claim. (*People v. Lawrence* (1991), 211 Ill. App. 3d 135, 138; *People v. Dredge* (1986), 148 Ill. App. 3d 911, 913.) However, the allegations of a post-conviction petition must be supported by the record in the case or accompanying affidavits. (*Lawrence*, 211 Ill. App. 3d at 138.) Although a *pro se* defendant seeking post-conviction relief would not be expected to construct legal arguments, cite legal authority, or draft a petition as artful as would counsel, the *pro se* defendant must still plead sufficient facts from which the trial court could find a valid claim of the deprivation of a constitutional right. (*People v. Lemons* (1993), 242 Ill. App. 3d 941, 946.) A *pro se* petitioner must set forth the specific manner in which his rights were violated. (*People v. Porter* (1988), 122 Ill. 2d 64, 74.) In the absence of allegations raising a relevant issue, the court is not bound to search the entire record for some undisclosed but mitigating circumstances. (*Porter*, 122 Ill. 2d at 76.) The dismissal of a post-conviction petition will not be reversed absent an abuse of discretion by the trial court. (*People v. Dean* (1992), 226 Ill. App. 3d 465, 467; *People v. Jackson* (1991), 213 Ill. App. 3d 806, 811.) Petitioner insists that his petition alleged the gist of constitutional claims of ineffective assistance of trial counsel and that his claims were not frivolous or patently without merit either on their face or in light of the applicable record. We agree.

■ Petitioner's petition first stated that he was denied his constitutional right to testify because of the ineffectiveness of his

trial counsel in knowing the applicable law. It is now generally recognized that a criminal defendant's prerogative to testify at his or her own trial is a fundamental right, which only the defendant may waive; whether to exercise that right is not one of those matters which is considered a strategic or tactical decision best left to trial counsel. (*Jones v. Barnes* (1983), 463 U.S. 745, 751, 77 L. Ed. 2d 987, 993, 103 S. Ct. 3308, 3312; *People v. Wilson* (1986), 146 Ill. App. 3d 567, 580; *People v. Campbell* (1984), 129 Ill. App. 3d 819, 821.) Petitioner's affidavit stated that he wished to testify in his own behalf at the trial, but his trial counsel told him he would be impeached with his prior misdemeanor battery conviction and that his testimony would probably damage his case. The State acknowledges that the attorney's advice was erroneous because petitioner's credibility could not be impeached by prior misdemeanor battery convictions pursuant to *People v. Montgomery* (1971), 47 Ill. 2d 510. Our review of the record confirms petitioner's argument that neither his misdemeanor battery conviction nor, for that matter, two other minor misdemeanor convictions revealed in the record could be a legal basis for impeachment of his credibility.

Nevertheless, the State argues that petitioner's claim should be rejected because he neither stated the nature or substance of his intended testimony nor alleged that his trial counsel used undue influence or coercion in denying his right to testify. The State cites no case law to support its argument that petitioner's failure to state the nature of his testimony is fatal to a petition which otherwise states the gist of a meritorious claim, in the context of the record of the trial court proceedings. The State also fails to cite legal authority for the proposition that petitioner's failure to allege undue influence or coercion by trial counsel constitutes a legal basis for rejecting an otherwise valid statement which could constitute the gist of a claim that his constitutional right to testify was denied.

Petitioner needed only to present a gist of a meritorious constitutional claim. (See *Lawrence*, 211 Ill. App. 3d at 138; *Dredge*, 148 Ill. App. 3d at 913.) Any other substantive questions relating to the issues raised in the petition are not to be addressed at the preliminary stage. (See *Dredge*, 148 Ill. App. 3d at 912-13.) *Dredge* and *People v. Von Perbandt* (1991), 221 Ill. App. 3d 951, support petitioner's argument that he adequately stated the gist of the requisite claim. In *Dredge*, the court reversed the summary dismissal of petitioner's verified petition which alleged only that her attorney did not allow her to testify in her own behalf. The court reasoned that because the petition was verified, coupled with petitioner's allegation, which was unrebutted by anything in the record, that she was deprived of her

right to testify at her trial, the petition was sufficient to require the circuit court to appoint counsel and to docket the cause for further consideration in accordance with the Act. (*Dredge*, 148 Ill. App. 3d at 913.) Similarly, in *Von Perbandt*, the *pro se* petition merely alleged that the trial counsel had prevented the petitioner from taking the stand. The court held that the petition provided the minimal amount of specificity required to survive summary dismissal. See also *People v. White* (1987), 152 Ill. App. 3d 404, 407; *Wilson*, 146 Ill. App. 3d at 580.

Petitioner's statement has a more sound basis in fact than either *Dredge* or *Von Perbandt*. Similar to *Dredge*, petitioner's statement is by affidavit. Whereas the statements in *Dredge* and *Von Perbandt* are very general, *i.e.*, "did not allow her to testify" and "prevented petitioner from taking the stand," petitioner's statement that his attorney told him "he would be impeached by his battery conviction" is more factually definitive. Also, we find no facts in the record to contradict petitioner's claim that he would have testified but for his attorney's erroneous advice.

Whether petitioner would be ultimately entitled to relief on this post-conviction claim was a separate matter not before the trial court at this initial stage. The test was whether defendant had alleged the bare-bones structure of a claim of deprivation of his constitutional rights which was not contradicted by anything appearing in the record. Since petitioner made the necessary allegations, and the record reflects nothing contradictory, a substantive ruling on the claim was premature prior to the appointment of counsel to represent petitioner and redraft the petition. We determine, therefore, that it was error for the court to have summarily dismissed the petition.

Petitioner's petition next asserted that the failure of his attorney to file a motion to suppress evidence seized from his apartment constituted ineffective assistance of counsel and undermined confidence in the outcome of his trial. In his memorandum of law, petitioner argued that the failure of police to knock and announce their presence and purpose prior to the search violated his constitutional rights. The trial court found first that the record disclosed the existence of exigent circumstances which provided lawful authority for the "no-knock-and-announce" search. (See *People v. Condon* (1992), 148 Ill. 2d 96, 102-03.) Accordingly, further finding that trial counsel had not been ineffective for failing to file a motion to suppress, the court summarily dismissed the petition.

When the record sufficiently contradicts a *pro se* post-conviction petition containing a bare-bones statement of a violation of a constitutional right, the court has the authority to evaluate the claim

in light of the record and determine whether or not the claim is frivolous or patently without merit. (*Dredge*, 148 Ill. App. 3d at 913; *Lawrence*, 211 Ill. App. 3d at 138.) The record in petitioner's case reveals the following facts pertinent to the search of petitioner's apartment. On December 7, 1989, Officer Schnecht of the Addison police department was told by an informant that petitioner was selling cocaine from his apartment in Addison, Illinois. The same day, the informant contacted petitioner and arranged the purchase of cocaine. The informant and Addison police officer Vrchota, acting undercover, went to petitioner's apartment. Upon entering the apartment, Vrchota observed on a desk in the living room a black Uzi-type weapon loaded with a clip of two rows of bullets. Petitioner told Vrchota the weapon was real and he kept it loaded at all times. The weapon was located near the front door of the apartment. Vrchota purchased a quarter ounce of cocaine, paying petitioner $400 in prerecorded money. Petitioner wrote his name and phone number on a white card which he gave to Vrchota for purposes of contacting him if she wished to purchase additional cocaine.

During the next two weeks, Vrchota contacted petitioner several times by using the telephone numbers given her to arrange a purchase of cocaine. As a result of the telephone calls, on December 18, 1989, Vrchota purchased approximately one ounce of cocaine from petitioner at his apartment. She paid him $1,200 in marked money and observed petitioner use an electronic scale to weigh out a specific amount of cocaine from a plastic bag containing additional cocaine. Petitioner then offered to sell her more cocaine, so Vrchota made arrangements with him to purchase an additional two to three ounces on December 21, 1989. On that date petitioner telephoned Vrchota and changed the sale date to December 27, 1989. When Vrchota telephoned him that day, petitioner again changed the sale date to the next day. On December 28, 1989, Vrchota purchased one ounce of cocaine from petitioner in his apartment.

The court signed the search warrant for petitioner's apartment on December 28, 1989, and police executed the warrant the same day. In the kitchen of the apartment off the living room the police seized the following items, some of which Officer Vrchota had observed on her visits to the apartment: a .9-millimeter Uzi pistol; an empty ammunition clip; an electronic scale; two bags containing approximately 22 grams of cocaine; a magazine containing live hollow-point .9-millimeter ammunition for an Uzi-type pistol; two boxes containing .9-millimeter ammunition and a .22-caliber handgun; a razor on a mirror containing white powder; documents containing petitioner's name; $2,000 with serial numbers matching

the prerecorded money used by Vrchota to purchase cocaine on December 18 and December 28; and a book containing undercover telephone and beeper numbers which Vrchota had previously provided to petitioner.

Petitioner argues that the entry, search, and seizure based on the search warrant violated his fourth amendment rights because the police failed to knock and announce their purpose and presence prior to forcing entry. The State responds that the decision of petitioner's attorney not to file a motion to suppress evidence was a matter of trial strategy and therefore did not constitute ineffective assistance of counsel; that the manner of executing the search warrant did not violate the fourth amendment because the police did knock and announce their presence and purpose; or, alternatively, the existence of exigent circumstances, as reflected by the record, constituted a proper exception to the knock-and-announce requirement.

Generally, the failure of police to knock and announce their authority and purpose prior to executing a search warrant is a crucial factor in assessing the reasonableness of the entry under the fourth amendment. (*People v. Condon* (1992), 148 Ill. 2d 96, 102-03.) Only where there are sufficient exigent circumstances will the failure to knock and announce be excused. (*Condon*, 148 Ill. 2d at 103.) Because the existence, or lack thereof, of exigent circumstances controls the result of petitioner's no-knock search argument, we will first examine this issue in relation to the State's several arguments.

"Since Illinois has no statutory requirement that officers knock and announce their authority and purpose prior to entering a dwelling, the propriety of such an entry must be determined by constitutional standards. [Citation.] Although the failure of law enforcement officers to knock and announce is not a *per se* constitutional violation, the presence or absence of such an announcement is an important consideration in determining whether a subsequent entry to arrest or search is constitutionally reasonable. [Citations.] The purpose of the knock-and-announce rule is to notify the person inside of the presence of police and of the impending intrusion, give that person time to respond, avoid violence, and protect the privacy as much as possible. [Citation.] Officers may be excused from the knock-and-announce requirement if exigent circumstances exist sufficient to justify the intrusion. [Citation.] Where exigent circumstances exist, the failure of the police to knock and announce their authority and purpose in the execution of a search warrant for narcotics does not violate the fourth amendment right against unreasonable searches and seizures. [Citation.] Exigent circumstances may encompass such considerations as danger to the police officers exe-

cuting the warrant, or the uselessness of the announcement, or the ease with which the evidence may be destroyed. [Citation.]" *Condon*, 148 Ill. 2d at 102-03.

Petitioner principally relies on the rationale of *Condon* to show that exigent circumstances did not justify the no-knock search of his apartment. In *Condon*, the police relied on the existence of exigent circumstances to execute a search warrant for defendant's residence without knocking or announcing their presence or purpose. The exigent circumstances were set forth only in the affidavit for search warrant and could be summarized as follows: the presence of cocaine and a police radio scanner in the home; the existence of cameras which surveilled the area outside the home; the presence of weapons in the house; and the fact that defendant's brother, who resided with defendant, was arrested two years earlier with cocaine and a loaded .22-caliber semiautomatic pistol in his possession.

In reversing the trial court's determination that exigent circumstances existed, the supreme court stated that such determination must necessarily deal with each potential exigent circumstance individually (*Condon*, 148 Ill. 2d at 104), and a bare synergistic or totality-of-the-circumstances analysis (the combination of drugs, plus weapons, plus surveillance equipment equals exigent circumstances even though no one of those circumstances, standing alone, would constitute exigent circumstances) should not be used if such analysis would defeat such a basic purpose of the knock-and-announce rule as preventing what could turn out to be deadly encounters between police and citizens. (*Condon*, 148 Ill. 2d at 103-04, 108.) Our analytical focus, therefore, is to determine whether there is an individual circumstance, standing alone, which equates to exigent circumstances.

The general circumstances common to both *Condon* and petitioner's case are the police awareness of recent cocaine sales from a residence and the probable presence of cocaine and a weapon or weapons inside the residence. The vital circumstance on which petitioner's and the State's argument focuses is the weapon or weapons in the residence to be searched and the reasonable propensity of their use against the police conducting the search. In *Condon*, the court noted that the possession of a weapon by defendant's brother had occurred two years earlier and at that time the brother had exhibited no violent or threatening behavior. With respect to the individual circumstances of the brother's arrest while in possession of cocaine and a weapon, the court stated, "Only if the officers feared that Bernard Condon [defendant's brother] would use a gun against them were they justified in dispensing with the knock-and-announce require-

ment." (148 Ill. 2d at 104.) The court further noted that there was nothing in the record to suggest that the brother had ever been violent or used a gun or threatened to use it and consequently this individual factor did not constitute an exigent circumstance.

The next individual circumstance analyzed by the *Condon* court was the fact that an informant told the police that there were weapons in the house to protect the cocaine and currency. The court noted there were no details concerning the weapons—type, quantity, location—or whether they had ever been used by anyone in the home in a violent manner. Consequently, the statement, "protect the cocaine and currency," was hardly conclusive that the weapons were to be used against the police. (148 Ill. 2d at 105.) Relying on their pronouncement in *People v. Ouellette* (1979), 78 Ill. 2d 511, 520, that the existence of a weapon should excuse the knock-and-announce rule only where the officers reasonably believe the weapon will be used against them if they proceed with ordinary announcements, the court determined that the bare circumstance of weapons in the house to protect the currency did not constitute exigent circumstances.

█ We find *Condon* distinguishable from the circumstances present in petitioner's case. Here the evidence concerned the presence of a loaded .9-millimeter Uzi pistol in the living room of the residence. Petitioner handled the weapon while transacting a cocaine sale three weeks prior to the search and remarked that the gun was loaded all the time. Unlike the affidavit for the search warrant in *Condon*, the affidavit for search of petitioner's residence requested the court to issue a no-knock warrant. We look upon this request as some evidence that the police feared for their safety if required to knock and announce their presence and purpose while executing the warrant.

We find the facts before us similar to those in *People v. Trask*, (1988), 167 Ill. App. 3d 694. There the court found exigent circumstances to exist because defendant's possession of a loaded gun when arrested $3^1/_2$ months prior to the no-knock-and-announce search justified the existence of a reasonable apprehension of danger by the police executing the search warrant. (*Trask*, 167 Ill. App. 3d at 705.) The supreme court in *Condon*, although rejecting certain aspects of the analysis of the *Trask* court, implicitly agreed that the circumstances therein were consistent with a " 'reasonable apprehension of danger' " by police. *Condon*, 148 Ill. 2d at 105, quoting *Trask*, 167 Ill. App. 3d at 705.

In addition to factors which are set forth in the affidavit for search warrant, the record also reveals that one of the police officers telephoned petitioner and engaged him in conversation just prior to police forcing entry into his home. The purpose of the telephone call

was to lessen the opportunity of petitioner to access the Uzi gun inside the home. This is further evidence that the police had a reasonable apprehension of danger. Such apprehension gave rise to exigent circumstances.

Because we find that exigent circumstances obviated the requirement that the police knock and announce their presence and purpose, it is clear that the motion to suppress would not have succeeded. Thus, petitioner has not shown that counsel's failure to file a motion to suppress evidence fell below an objective standard of reasonableness. (See *People v. Titone* (1992), 151 Ill. 2d 19, 34; *People v. Johnson* (1986), 143 Ill. App. 3d 34, 43.) We conclude that defendant was not deprived of the effective assistance of counsel. Hence, the trial court did not err in dismissing as frivolous and patently without merit petitioner's post-conviction petition claim that failure to file a motion to suppress evidence denied him the effective assistance of counsel.

The judgment of the circuit court is affirmed in part and reversed in part and the case is remanded for further proceedings consistent with this court's ruling.

Affirmed in part; reversed in part and remanded.

DOYLE and COLWELL, JJ., concur.